# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| | | |
|---|---|---|
| **DAVID STEIN**<br>dstein@samuelandstein.com | September 28, 2018 | ADMITTED IN<br>NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. Paul A. Engelmayer, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

   Re: <u>Cali, et al. v. Tacos Cuaotla Morelos Inc., et al.</u>
     *Docket No. 17-cv-7087 (PAE)*

Dear Judge Engelmayer:

  We represent named plaintiffs Wilfrido Cali and Arnulfo Sosa, as well as opt-in plaintiff Jorge Arturo Romero Cordero, in the above-captioned matter and submit this letter to the Court with the consent of Michael P. Hilferty, Esq., and Nina A. Ovrutsky, Esq., counsel for defendants, in accordance with the Court's Order of September 6, 2018, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

<u>Background</u>

  Plaintiffs filed their complaint in this matter on September 18, 2017. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for minimum wage violations and unpaid overtime pay, as well as claims solely under the New York Labor Law for violations of the "spread of hours" rules and failure to provide wage notices and failure to provide wage statements.

  Specifically, plaintiffs alleged that they were employed by defendants from September 2016 through August 2017, February 2016 through August 2017, and July 2016 through June 2017, respectively. They allege that they were employed by defendants as delivery people, and that they were paid $4.00 per hour throughout their employment. Mr. Cali alleges that he worked 35 hours per week to start his employment, and 50 hours per week thereafter; Mr. Sosa says that he worked 60 hours per week when his employment began, but 30-33 hours per week thereafter. Mr. Romero Cordero states that he worked 54 hours per week. Plaintiffs were paid in cash and did not receive any paystubs or wage notices required by the Wage Theft Prevention Act during their employment.

Based on these facts, plaintiffs calculated their estimated damages as follows, if they prevailed at trial on *all* of their claims: for Mr. Cali, $38,000 (consisting of $26,500 in actual and liquidated overtime damages under the FLSA and NYLL, $1,500 in actual and liquidated damages for spread of hours violations, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or accurate paystubs); for Mr. Sosa, $53,000 (consisting of $43,000 in actual and liquidated overtime damages under the FLSA and NYLL, and $10,000 for defendants' violations of the Wage Theft Prevention Act); and for Mr. Romero Cordero, $52,000 (consisting of $39,000 in actual and liquidated overtime damages under the FLSA and NYLL, $3,000 in actual and liquidated damages for spread of hours violations, and $10,000 for defendants' violations of the Wage Theft Prevention Act). In other words, plaintiffs would have been owed a total of $143,000.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' claims against defendants for a total of $67,500, with each plaintiff receiving a pro-rata share of the settlement based on the above calculations. While the final settlement amount is less than plaintiffs' maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of their claims and the risks attendant with continuing the litigation.

While defendants generally conceded the named plaintiffs' allegations about their periods of employment and their rates of pay, they testified that they did not believe Mr. Romero Cordero worked for them at all. Moreover, they vigorously disputed the number of hours plaintiffs worked each week. Defendants testified that employees never worked any overtime, and that in particular the named plaintiffs worked just 38 and 30 hours, respectively. (They further testified that no employees worked more than 10 hours, so that no spread of hours pay would be owed.)

Defendants did not maintain any sort of employment records of any sort. Meanwhile, plaintiffs did not have any records of their own, and their calculations were based solely on their own recollections about their work history. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. Nevertheless, that would have made it a disputed fact question, with little possibility of fully resolving the case without trial.

Defendants also denied that they met the $500,000 revenue threshold for enterprise coverage under the FLSA, and produced some financial records purporting to substantiate their position. However, because defendants did a significant amount of cash business -- plaintiffs were paid in cash, for instance -- these records were of questionable probative value. Moreover, plaintiffs could have refiled the case in state court if they were unable to meet their burden to prove otherwise. However, that would have added significant delay to the process, and would have represented yet another disputed fact that could only have been established at trial.

Nevertheless, the risks in this case are not primarily factual or legal, but rather a practical issue: plaintiffs would have a difficult time collecting more money if they won a larger judgment at trial. Defendants' business, even assuming it was more successful than its financial records

reflected, was not that large, and did not appear to be able to sustain a large judgment. And, indeed, defendants require an extended period of time to pay off the settlement amount that the parties finally agreed to.

By agreeing to settle at this juncture, plaintiffs were able to gain a significant percentage of the damages they were potentially owed, without the delay of waiting for trial or the risks attendant with trial. And because collectability is a serious concern, litigation delays – not to mention costs incurred by defendants in defending themselves – could have significantly impaired plaintiffs' ability to recover more money, regardless of their success at trial. Thus, plaintiffs decided to accept defendants' offer.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiffs suggest that they weigh in favor of settlement approval. The total settlement amount is 47% of plaintiffs' maximum possible recovery. They will receive these funds without running any risk or having to prove their claims. Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable). And although this settlement agreement calls for installment payments, plaintiffs are protected by a confession of judgment for 200% of the settlement amount.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiffs are experienced wage-and-hour litigators, and in consultation with plaintiffs they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants, so there is no risk they will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out-of-pocket expenses of $1,394.15 (filing fee, service of process, subway fare, and deposition costs)[1] and will retain 1/3 of the net settlement (i.e., an additional $21,535.28[2]) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her

---

[1] The individual amounts are itemized in Exhibit B. The Court can take judicial notice of the filing fee; receipts for service of process and deposition costs are attached as Exhibit C.

[2] One third of the net settlement is actually $22,035.28; we have credited the $500 that defendants were required to pay for vacating the default against the one third we are owed.

counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 92% of our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[3] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 23.40 | $8,575.00 |
| David Nieporent | Senior Associate | $325 | 46.78 | $15,203.50 |
| **TOTAL** | | | 70.18 | $23,778.50 |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate

---

[3] Travel is billed at half the normal billing rate, and a handful of basic tasks that did not require the expertise of a senior partner were billed at just $125.

of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation"). And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v.. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018). And in the Eastern District, where the rates are a bit lower, we were recently awarded fees of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

David Stein

Enc.

cc: Michael P. Hilferty, Esq. (via ECF)
    Nina A. Ovrutsky, Esq. (via ECF)